IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CRIM. CASE NO: 2:13cr133-MHT |
| ) | (WO) |
| TERRANCE MAURICE THOMAS ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On February 18, 2014, Terrance Maurice Thomas ("Thomas") filed a motion to suppress all evidence seized during an allegedly unconstitutional search of the car in which he was a passenger on December 15, 2012. (Doc. # 52). On March 7, 2014, Thomas filed an amended motion to suppress (doc. # 68) in which he asserts that the officers did not have probable cause or reasonable suspicion to detain him after the driver of the vehicle was given a ticket. According to Thomas, the officer's testimony about the search of his vehicle was not credible and he lacked probable cause to search. Consequently, Thomas argues that the search was violative of the Fourth Amendment.

The court held an evidentiary hearing on the defendant's motion to suppress, as amended, on April 4, 2014. Based on the evidence presented during the hearing, and argument of the parties, the court concludes that the motion to suppress is due to be denied.

**II. FACTS**

On December 15, 2012, Lieutenant Kenneth Parker ("Parker") and Corporal Lionel Davidson ("Davidson") of the Greenville Police Department were running stationary radars

near Interstate 65 and Highway 243 in Greenville, Alabama in an attempt to catch speeders. (Evid. Hr'g Tr. at 10-11).  Parker had his canine, Dalton, in his vehicle, and Davidson was in another patrol car. (*Id*. at 14-15).  At approximately 10:45 p.m., Parker observed a vehicle driven by co-defendant Travis Moss ("Moss") "traveling at a high rate of speed and both of our radars displayed 79 MPH."[1]  (Doc. # 68, Ex. 1; Evid. Hr'g Tr. at 53).  Parker initiated a traffic stop. (Evid. Hr'g Tr. at 15).  When Parker approached the vehicle, Moss was driving and Thomas was in the passenger seat. (*Id*. at 17).  Parker detected the "strong odor of marijuana coming from the vehicle" at that time. (*Id*. at 15-16).  He also observed that the passenger, Thomas, was "acting nervous." (*Id*. at 54).  Moss was ticketed for speeding.

After giving Moss the speeding ticket, Parker asked for permission to search the vehicle. (*Id*. at 17).  Moss told Parker that he would need to ask Thomas. (*Id*.)  Thomas declined to give Parker consent to search. (*Id*. at 18).  At that point, Parker got Dalton from his vehicle and deployed the dog for a canine sniff. (*Id*.)  Dalton alerted on the passenger side doorjamb. (*Id*. at 33-34).  Parker also testified that he personally smelled marijuana emanating from the trunk of the car. (*Id*. at 34-35).  At that point, Parker searched the vehicle. (*Id*. at 35).

A firearm, cash, and stems and seeds of marijuana were found inside the vehicle and fourteen (14) bags of marijuana were found in a duffle bag in the trunk. (*Id*. at 35 & 44-45).  Thirteen (13) bags of marijuana were vacuum sealed and one bag was open. (*Id*. at 43-44).

---

[1] The posted speed limit was 55 miles per hour.  (Evid. Hr'g Tr. at 53).

Moss and Thomas were then arrested. (*Id*. at 46).

### III.  DISCUSSION

### A.  Validity of Traffic Stop

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also*, *United States v. Pruitt,* 174 F.3d 1215, 1217, fn. 1 (11th Cir. 1999) ("We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop. Accordingly, the stop was reasonable for purposes of the Fourth Amendment and withstands review.").[2] A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)). In this case, the officers had probable cause to stop Moss's vehicle because they observed him speeding and the stationary radars confirmed that Moss was

---

[2] Because the court concludes that the officer had probable cause to stop the vehicle, the court pretermits discussion of whether reasonable suspicion would have sufficed to support the traffic stop. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . . Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).") (citations in original omitted).

exceeding the posted speed limit.[3] Parker stopped Moss's vehicle only after having probable cause to believe that he had committed a traffic violation in that he was speeding. Parker testified that he initiated the traffic stop only after his radar indicated that Moss was traveling at 79 mph and after he personally observed that the vehicle was speeding. There is no dispute that the initial traffic stop was valid. Consequently, the court concludes that Parker had probable cause to stop Moss.[4]

## B.  Probable Cause to Search

Parker testified that when he approached the car to talk to Moss, he smelled the odor of marijuana emanating from the car. (Evid. Hr'g Tr. at 15-16, 19, 29, 53-55). He also informed Corporal Davidson that he smelled marijuana when Parker asked Davidson to

---

[3] To the extent that the defendant argues that the traffic stop was merely pretextual and that Parker was really looking for vehicles with drugs as evidenced by the presence of Dalton, he is entitled to no relief. The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid. *See United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). Furthermore, as the Supreme Court has said, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Consequently, the officer's subjective intent is not dispositive.

[4] Thomas argues Alabama law required Parker to release Moss and Thomas once he issued the traffic citation. However, the question before the court is whether the search comported with the Fourth Amendment of the United States Constitution, not whether the stop complied with Alabama state law.

To the extent that Thomas inartfully argues that the duration of the traffic stop was unreasonable because the traffic stop was extended after Parker gave Moss the citation, he is entitled to no relief. After Parker lawfully detained Moss based upon the traffic violation, Parker was entitled to check Moss's driver's license, registration and insurance information "including questioning the driver about the traffic violation, requesting consent to search the vehicle *and* running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999). *See also United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) (police officer was entitled to "take reasonable actions, based upon the circumstances, to protect [himself] during investigative stops.") The undisputed testimony demonstrates that Parker informed Davidson that he smelled marijuana as he was walking to his patrol car, and *before* he gave Moss the ticket. Thus, at that point, probable cause to search the car existed.

4

watch the occupants of the vehicle. (*Id*. at 58). After lawfully stopping the vehicle, Parker then had the duty to investigate suspicious circumstances.[5] *United States v. Simmons*, 172 F.3d 775, 779 (11th Cir. 1999). The law in this circuit is clear "that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982). *See also United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("[A]gent's suspicions rose to the level of probable cause, when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana."); *United States v. Salley*, 341 Fed. Appx. 498, 500 fn. 2 (11th Cir. 2009) ("This Court has found that the smell of marijuana satisfied the higher "probable cause" standard."); *United States v Hamilton*, 299 Fed. Appx. 878, 882 (11th Cir. 2008) ("We have held that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search."). Consequently, as soon as he smelled the strong odor of marijuana coming from the car, Parker had probable cause to search the car. When Parker discovered the gun and drugs in the vehicle, he then had probable cause to arrest Moss and Thomas.

Parker testified that he could smell marijuana coming from the vehicle when he reached into the driver's door to speak to Moss. He further testified that he initially smelled marijuana in the car, and he later smelled marijuana emanating from the trunk. (Evid. Hr'g

---

[5] Parker testified that Thomas appeared "nervous." (Evid. Hr'g Tr. at 54-55). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (1999).

5

Tr. at 15-16 & 34). Based on his training and experience as a police officer, he testified that he recognized the smell of marijuana, and he could tell the difference in smell between raw marijuana and burnt marijuana. (*Id*. at 7-8). When Parker opened the trunk of the car, he smelled marijuana and saw an open, duffle bag containing marijuana in plastic bags.[6] (*Id*. at 17, 63). One of the vacuum sealed bags had a hole cut in it, and marijuana was visible. The court has carefully considered Parker's demeanor during his testimony and concludes that his testimony was credible.[7]

Thomas argues that Parker's testimony regarding smelling marijuana in the car is simply not credible. According to Thomas, Parker could not have smelled the marijuana emanating from the trunk and that he only deployed Dalton to search after Thomas refused consent to search the car. However, Thomas failed to present any facts to undermine Parker's testimony. Thomas argues that because Parker indicated on the Uniform Traffic Citation ("UTC") that Moss should be released on "his own recognizance," his testimony that he smelled marijuana was not credible. (Doc. # 75 at 3) ("The idea that an officer who, as Lt. Parker has testified, would smell a strong odor of marijuana and then indicate his intention of release of the suspect on the UTC is nonsensical, unless in fact no marijuana had

---

[6] The bags were described as vacuum sealed except for one bag with a hole cut in it. (Evid. Hr'g Tr. at 44).

[7] Parker also testified that he left Moss and Thomas in the vehicle after he smelled the marijuana because he wanted to "keep the situation and the occupants calm and don't even alert them to the fact that I smelled marijuana at that point of time." (Evid. Hr'g Tr. at 55). Regardless of the wisdom of Parker's decision to leave the two suspects in the car at that time, the court credits his testimony that he smelled marijuana when he approached the vehicle.

6

actually been detected to begin with.") Parker's testimony regarding whether he selected the "release on own recognizance" or he had the ability to change the UTC is not as clear as Thomas would like to believe. More importantly, however, Thomas ignores Parker's very clear testimony that he was not free to leave, regardless of what the UTC said.

> Q: Well, my question to you, officer, is why would you do that if you really detected the odor of marijuana?
>
> A: The simplest way to explain that to you, sir, is that that citation and all E site citations have that released on own recognizance. That is on that ticket. I don't write that on there. It is already on that ticket. However, *he was not free to go, even after I gave him that, because of that smell of marijuana*.

(Evid. Hr'g Tr. at 24).

The only *facts* before the court are Parker's testimony that he smelled marijuana, Davidson's testimony that he smelled marijuana,[8] and the drug dog's alert to the smell of drugs in the car. Thomas does not challenge the credibility of Davidson's testimony and the court has already found Parker's testimony that he smelled marijuana credible.

Even if the court were to conclude that Parker's testimony was not credible, the fact that the drug dog alerted to the presence of drugs in the vehicle is sufficient probable cause to justify the search. *See United States v. Tamari*, 454 F.3d. 1259, 1265 (11th Cir. 2006); *United States v. Wilbur*, 458 Fed. Appx. 829, 830 (11th Cir. 2012) ("The drug dog alerted to the presence of drugs in [defendant's] vehicle, which gave the officers probable cause to

---

[8] Davidson testified that he smelled marijuana when he approached the vehicle. (Evid. Hr'g Tr. at 72-74).

search the vehicle without a warrant[.]"; *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) ("probable cause arises when a drug-trained canine alerts to drugs"). Based on the facts of this case, the court concludes that probable cause existed for the search of the vehicle, and that Thomas's motion to suppress should be denied.

## CONCLUSION

For the reasons as stated, the court finds that the defendant's rights secured by the Fourth Amendment were not violated. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 5, 2014.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of April, 2014.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE